*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0151**

State of Minnesota,
Respondent,

vs.

Joseph Edward Wilson,
Appellant.

**Filed January 19, 2016
Affirmed in part and reversed in part
Connolly, Judge**

St. Louis County District Court
File No. 69DU-CR-13-4468

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges his conviction of two counts of first-degree criminal sexual

conduct, arguing that the district court abused its discretion in failing to review certain

evidence in camera and in denying his motions for a mistrial and a new trial because of the hearing impediment of one juror and because the prosecutor committed misconduct. He also challenges his sentence on both counts, arguing that they were part of a single behavioral incident. Because we see no abuse of discretion in the evidentiary decision or in the denial of the motions for a mistrial or a new trial and because the prosecutor did not commit misconduct, we affirm appellant's convictions. Because the two counts on which appellant was sentenced occurred during the same time period, they were part of a single behavioral incident, so we reverse the sentence imposed on one count.

## FACTS

Between November 2012 and August 2013, appellant Joseph Wilson, then 47, sexually abused ten-year-old K., the daughter of a woman with whom he was living. In October 2013, appellant moved out of the woman's home.

The woman became concerned about K., who complained of headaches and, in her mother's words, appeared to have "lost her spark." When she asked K. if appellant had abused her, K. said that he had digitally penetrated her anus and her vagina using baby oil and Vaseline.

K. was interviewed by a First Witness[1] investigator, whom she told about an incident when she was sleeping in her mother's bed and woke to find appellant in the bed with her and putting his "private part" into her butt. Appellant asked K. if she knew what he did to her; she said no; and he said, "It's our little secret." K. also told the investigator

---

[1] First Witness is a child-abuse resource center that trains professionals to conduct interviews of children.

that, on other occasions, she woke to find appellant in her room; her pants would be off; and she could smell Vaseline in her vagina and feel it in her butt.

Appellant was charged with two counts of first-degree criminal sexual conduct: one count for engaging in sexual penetration with a person under the age of 16 with whom he had a significant relationship, involving multiple acts of sexual abuse over an extended period of time, in violation of Minn. Stat. § 609.342, subd. 1(h)(iii) (2012), and one count for engaging in sexual penetration with a person under the age of 13 and more than 36 months younger than he, in violation of Minn. Stat. § 609.342, subd. 1(a) (2012), with reference to Minn. Stat. § 609.342.2(a).

Appellant moved to have K.'s school records, including report cards, attendance records, and any communication with her family, released for in-camera review. The district court denied his motion, then denied it again when appellant sought reconsideration. Both K. and her mother testified at appellant's trial, and the jury saw a video recording of K.'s interview at First Witness.

During trial, one of the jurors said she had difficulty hearing one witness; she was provided with a hearing aid. Appellant moved for a mistrial and, later, a new trial on the ground of the juror's hearing difficulty; both motions were denied.

The jury found appellant guilty on both counts. He was sentenced to the presumptive 360 months in prison (the statutory maximum) on each count, to run concurrently.

On appeal, he challenges his conviction, arguing that the district court abused its discretion in denying both his motion to have K.'s school records reviewed in camera and

3

his motions concerning the juror with a hearing difficulty and that the prosecutor committed misconduct by telling the jurors to trust their "hunches and intuition"; he also challenges his sentence, arguing that he should have been sentenced on only one count because both counts were part of the same behavioral incident.

## DECISION

### 1. Denial of appellant's motion for in-camera review of school records

This court reviews the denial of a motion for in-camera review for an abuse of discretion. *State v. Evans*, 756 N.W.2d 854, 873 (Minn. 2008).

K.'s school records were private data. *See* Minn. Stat. § 13.32, subd. 3 (2014). There is no right to in-camera review of private data; "the defendant must first establish a plausible showing that the information sought would be both material and favorable to his defense." *State v. Hokanson*, 821 N.W.2d 340, 349 (Minn. 2012) (quotation omitted).

Appellant argues that information from teachers or other school personnel on changes in K.'s behavior while the alleged abuse was occurring could be helpful in refuting K.'s mother's statement that K. "lost her spark." The district court concluded that such information would not be helpful because

> [a]ny failure by school records to corroborate [K.'s mother's] statement could mean any number of things: [K.]'s personality did not change in that time period; [K.]'s personality changed, but her teacher(s) did not notice the change; [K.]'s personality changed and her teacher(s) noticed, but failed to make a note of the change in her official records. Furthermore, [K.] was ten years old at the time of the alleged offenses. If school records did reflect a personality change, it could be the result of any number of factors that may cause personality changes in ten-year-old girls. The potential causes would be too numerous to even begin listing.

4

Appellant provides no support for his implied views that school records accurately reflect personality changes and that an absence of indication of personality change in school records is a contradiction of sexual abuse.

Appellant did not "establish a plausible showing" that K.'s school records "would be both material and favorable to his defense." *See id.* The denial of his motion was not an abuse of discretion.

## 2. Denials of motions based on juror's hearing difficulty

During the trial, appellant's motion to dismiss a juror who had a hearing difficulty and wore hearing aids was denied; his later motions for a mistrial and for a new trial on that basis were also denied. The standard of review for all three dismissals is abuse of discretion. *See, e.g.*, *State v. Manley*, 664 N.W.2d 275, 285 (Minn. 2003) (motion to dismiss a juror); *State v. Long*, 562 N.W.2d 292, 296 (Minn. 1997) (motion to declare a mistrial); *State v. Landro*, 504 N.W.2d 741, 745 (Minn. 1993) (motion for a new trial based on juror misconduct). To show that any of the denials was an abuse of discretion, appellant must be able to show that he was prejudiced by the juror's hearing difficulty. *See, e.g.*, *State v. Henderson*, 355 N.W.2d 484, 486 (Minn. App. 1984) (noting that defendant had to show prejudice from actual juror misconduct to be entitled to a new trial).

During the trial, the district court questioned the juror who had complained that she had trouble hearing on the previous day of the trial.

> Q.   So it's important that we know that you didn't miss anything yesterday, that you heard everything –
> A.   Yes.
> Q.   . . . [A]nd all of the evidence that was presented was heard and understood by you.

5

A. Yes.

Q. You feel that you did hear it all?

A. Yes.

. . . .

Q. [The prosecutor] asked a question, and you heard the witness's answer to that question?

A. From the person at the witness [stand], yes. . . . [T]he witnesses were clear. The one . . . brought her voice down pretty low sometimes . . . . But . . . I felt I understood everything that she said.

The juror indicated that she had trouble hearing the testimony of only one witness, an officer. The district court questioned her further:

Q. [D]o you feel that you heard everything [the officer] had to say clearly? And you've mentioned a couple spots where you thought you didn't but you thought that [her testimony] got clarified for you?

A. I felt it was all clarified. I felt I totally understood her testimony.

Q. So no question in your mind that you know what [the officer] had to say yesterday?

A. Right.

Q. And that you didn't miss anything because you couldn't hear it?

A. I heard it. I would have loved to have had it clearer, that was the only thing. But I could hear [the officer].

The district court denied the motion to dismiss the juror, saying "[F]rom what I'm hearing from [the juror], she's satisfied that she's heard all the testimony, and that with regard to the slight instance during [the officer's] testimony that she was unable to discern the answer, it sounds like it was clarified in follow-up questions."

In any event, the testimony of the officer whom the juror had some difficulty hearing was not critical or extensive, amounting to 18 pages out of a 302-page trial transcript, or about five percent. The officer testified that her only involvement in the case was

6

answering K.'s mother's phone call reporting abuse and interviewing K.'s mother at her residence, that she did not interview K. because she was not a specialist in interviewing children, and that K.'s mother told her that K. said she had been touched inappropriately by appellant, including digital anal and vaginal penetration, about a year earlier. Appellant does not explain why a juror's difficulty in hearing this testimony would have been prejudicial to him.

The district court did not abuse its discretion by not dismissing the juror and by not granting motions for a mistrial or a new trial on the ground that the juror had not been dismissed.[2]

**3.    Prosecutorial misconduct**

Because appellant did not object to the prosecutor's comments during trial, this court reviews the alleged misconduct only if doing so is necessary to ensure the fairness and integrity of the judicial proceedings. *State v. Ramey*, 721 N.W.2d 294, 304 (Minn. 2006). Absent any objection during trial, this court reviews an allegation of prosecutorial misconduct under a modified plain-error test, which requires first that appellant show that the prosecutor's comments were misconduct that was plain, i.e., clear or obvious, and second, that the state show the comments did not prejudice appellant. *See id*.

---

[2] Appellant also argues that he was prejudiced because the hearing device that the court provided to the juror for the last part of the trial proved superior to the juror's hearing aids, so the juror was able to hear K.'s testimony more clearly than the testimony of earlier witnesses. But appellant offers no support for the implied assertion that a juror must be able to hear all testimony equally well, and, in any event, K.'s testimony would have been of greater significance and made a stronger impression on the jurors than the officer's testimony.

During her opening statement, the prosecutor told the jury, "Trust your hunches"; during her closing argument, she said "Trust your instincts . . . ." Appellant argues that these statements could have suggested to the jury that it could convict him without a reason and not that it needed proof beyond a reasonable doubt. But the context in which the prosecutor's remarks were made indicates that they applied to K.'s mother's reasons for questioning K., not to the jury's determination of appellant's guilt.

After the "Trust your hunches" remark, the prosecutor told the jury that: (1) K.'s mother couldn't put her finger on what was wrong with K. but trusted her intuition when she asked K. if appellant had abused her; (2) the jury would hear evidence from K.'s mother, K., the officer who responded to K.'s mother's call, the doctor who examined K. in the emergency room, the social worker who interviewed K. at First Witness, and the officer who did a follow-up interview with K.'s mother; and (3) some of the testimony was not going to be easy to listen to, but the jurors would have to pay close attention to it.

After saying, "Trust your instincts," the prosecutor told the jury that: (1) the purpose of closing argument was to "connect all the evidence," (2) K.'s mother trusted her instinct when she reported her suspicion that appellant had abused K. to the police; (3) the investigation transformed a mother's instinct that K. had been abused to proof beyond a reasonable doubt that K. had been abused; (4) the jurors were to rely on their own recollection, not what the prosecutor said, because what the prosecutor said wasn't evidence; (5) before and during the trial, both K.'s mother and K. gave consistent versions of what had happened to K.; (6) proof beyond a reasonable doubt is the highest burden of proof in the judicial system, but it does not require 100% certainty or certainty beyond all

8

possibility of doubt and does require the use of jurors' common sense, reason, and experience in making important decisions; and (7) the prosecution had the exclusive burden of proof.

Neither of the prosecutor's remarks expressed or implied the view that the jury could convict appellant with anything less than proof beyond a reasonable doubt. The remarks were not misconduct, and, if they had been, appellant was not prejudiced by them. The district court did not abuse its discretion by denying a new trial on the ground of prosecutorial misconduct.

**4.     The sentence**

The transcript of the sentencing hearing indicates that appellant's criminal-history score was seven for the first offense and ten for the second and that the presumptive sentence for each count was the statutory maximum, 360 months in prison. He was sentenced to 360 months in prison on each count, to run concurrently.

He argues that the district court erred by sentencing him on both counts because the two counts involved conduct that occurred during a single behavioral incident. If the facts are undisputed, the determination of whether multiple offenses arose from a single behavioral incident is reviewed de novo. *State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012).

In criminal-sexual conduct cases, the criteria for determining whether offenses arose out of a single behavioral incident include: (1) whether the conduct involved was motivated by a desire to obtain a single criminal objective and (2) whether the offenses occurred at substantially the same time and place, arose in a continuous and uninterrupted course of

conduct, and manifested an indivisible state of mind. *State v. Secrest*, 437 N.W.2d 683, 685 (Minn. App. 1989) (noting that), *review denied* (Minn. May 24, 1989). Thus, the facts that: (1) the offenses were motivated by a desire to obtain a single criminal objective, i.e., the sexual penetration of a ten year old; the one incident giving rise to Count II occurred within substantially the same time period and in the same place as the multiple incidents giving rise to Count I; and (2) the offenses arose in a continuous course of conduct all indicate that the two counts were part of the same behavioral incident.

Because appellant's sentence on each count was the same, we cannot determine which count was the less serious and should be reversed. *See State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006) ("[A]n appellate court vacating a sentence or sentences pursuant to section 609.035 [prohibiting multiple sentences for offenses that were committed as part of a single behavioral incident] should look to the length of the sentences actually imposed by the district court to ascertain which offense is the most serious, leaving the longest sentence in place."). However, because each sentence was the statutory maximum, that issue is moot. We reverse the sentence on Count II. *See* Minn. Stat. § 244.11, subd. 2(b) (2014) (providing that this court may "set aside the sentence imposed or stayed and direct entry of an appropriate sentence").

We affirm appellant's conviction and his sentence on Count I and reverse his sentence on Count II.

**Affirmed in part and reversed in part.**